IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID CONNER,

        Plaintiff,

v.

BRENT REILLY, ROCK COUNTY, WISCONSIN and
ROBERT D. SPODEN, Rock County Sheriff,

        Defendants.

OPINION AND
ORDER

16-cv-336-slc

---

      This case presents an unfortunate situation of *caveat emptor* ("buyer beware"). In March 2015, plaintiff David Conner paid $15,000 cash to his son, Christopher Conner, for a 2009 Dodge Challenger. Just days earlier, Christopher had purchased the Challenger for that amount from a Craigslist seller, relying in part on the seller's representation that the car was not subject to any liens. As it turns out, the notice of lien release presented by the seller was phony: the seller actually had obtained this Challenger by fraud and it remained subject to a lien owned by Bank of the West. David Conner learned this approximately two and a half months after he bought the car from his son, when the Rock County Sheriff's Department seized the Challenger pursuant to a search warrant. After the sheriff's department authorized release of the car to its original owner, Conner filed this lawsuit. Conner claims that by releasing the car without first allowing Conner the right to a hearing, defendants Rock County, Sheriff Richard Spoden, and Detective Brent Reilly deprived Conner of his federal right to procedural due process. Conner also brings a state law conversion claim against Reilly and a claim of civil conspiracy between the Rock County and Cedar County, Missouri Sheriff's Departments. Defendants removed the case to this court on May 23, 2016 (dkt. 1), and have moved for summary judgment on all of Conner's claims (dkt. 11). For the reasons stated below, I am granting defendants' motion.

In support of their summary judgment motion, defendants assert that:

>(1) Conner did not have a legitimate claim of entitlement to the vehicle because his rights were inferior to the Bank of the West's and in any event, he was not a good faith purchaser of the vehicle;
>
>(2) Conner had adequate post-deprivation remedies;
>
>(3) Detective Reilly did not participate in the alleged constitutional violation and in any event, he is entitled to qualified immunity;
>
>(4) Conner failed to adduce facts showing the existence of an official policy or custom necessary for Rock County to be liable under § 1983;
>
>(5) Conner alleged no facts suggesting that Sheriff Spoden participated in any way in the alleged violation of Conner's rights;
>
>(6) Conner's conversion claim fails because he did not have a right to possession of the vehicle that was superior to the Bank of the West's; and
>
>(7) Conner's civil conspiracy claim fails because he suffered no damages.

*See* Dkts. 11, 13.

In response to defendants' motion, Conner has offered no evidence or argument in support of any theory of liability under 42 U.S.C. § 1983 against either Rock County or Sheriff Spoden. Accordingly, I am granting summary judgment to defendants on these claims at the outset. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped

arguments, and arguments that are unsupported by pertinent authority, are waived") (brackets and internal quotation marks omitted).

As for Conner's § 1983 and conversion claims against defendant Reilly, I find that these claims fail because Conner has not established that he ever had a legitimate claim of entitlement to the Challenger, or that Reilly was personally involved in the deprivation of his alleged property interest or that Conner lacked adequate post-deprivation remedies for the alleged deprivation.

Finally, Conner's conspiracy claim cannot survive summary judgment because he has failed to come forth with any evidence establishing any agreement between the Rock County and Cedar County sheriff's departments to commit unlawful acts or that he suffered damages as a result of their actions.

The material facts are largely undisputed:

## FACTS

In June 2013, Michael and Linda Larsen, who lived in El Dorado Springs, Missouri, purchased a used 2009 Dodge Challenger R/T,[1] VIN # 2B3LJ54T39H503270 (the "Challenger"). The Larsens financed their purchase of the Challenger through a secured loan from the Bank of the West. The Bank of the West had a perfected security interest in the Challenger, which was noted on the Challenger's Certificate of Title.

---

[1] "R/T is the performance marker used on Dodge automobiles since the 1960s . . .. R/T stands for Road/Track (no 'and'). R/T models come with R./T badging, upgraded suspension, tires, brakes and more powerful engines." From 2008 forward, the Dodge Challenger R/T has come equipped with a 5.7 liter Chrysler Hemi engine rated above 370 HP. *See* https://en.wikipedia.org/wiki/R/T, lasted visited on January 16, 2017. In other words, the Larsens' Challenger was a high performance vehicle that had features popular with muscle car enthusiasts.

A little less than two years later, in March 2015, the Larsens advertised the Challenger for sale on Craigslist, a well-known, on-line classified advertising site. At the time, the balance due on the Larsen loan from Bank of the West was approximately $15,000. On or about March 9, 2015, a person who identified himself as "L.C. Turner" replied to the Larsens' ad and agreed to purchase the Challenger for $22,500. Turner provided the Larsens with a cashier's check purportedly issued by Bank of America, payable to Bank of the West, in the amount of $22,500.

The Larsens sent this cashier's check to Bank of the West, with instructions that it pay the balance due on the Larsen's car loan and return the remainder, approximately $7,000, to the Larsens. The check was presented to the bank on March 9, 2015. The Bank of the West gave provisional credit for the check drawn on the Bank of America and put the Larsen loan in "paid off" status, but it did not release its lien on the Challenger. After Bank of the West informed Linda Larsen that the Larsen loan balance was zero, the Larsens signed and dated the Missouri certificate of title for the Challenger and released it to L.C. Turner.

As it turns out, Turner's cashier's check was a phony. On March 13, 2015, it was returned to Bank of the West unpaid and marked "REFER TO MAKER." Upon receipt, the Bank of the West promptly reversed the provisional credit it had given to the Larsens towards their loan balance. On March 20, 2015, Linda Larsen was informed that the check was fraudulent and had not been paid by Bank of America, and as a result, Bank of the West still had a lien on the Challenger and the Larsens still owed $15,000. Linda Larsen reported the fraud to the Cedar County, Missouri sheriff's department, which in turn listed the Challenger as stolen in the National Crime Information Center (NCIC) database.

Meanwhile, on or before March 12, 2015, a person–who may or may not have been the same person who dealt with the Larsens–posted an ad on Craigslist offering the Challenger for sale. Christopher Conner responded to the ad. Christopher Conner is the son of plaintiff David Conner, who lives in Rock County, Wisconsin. Christopher Conner buys and sells cars as a hobby and has worked as an auto salesperson for several Rock County area dealerships. Christopher Conner sent a text message to the telephone number on the Craigslist ad to ask whether the car was still for sale; he received a response that it was. Christopher Conner then called the number and talked to the seller, eventually agreeing to buy the car for $15,000 cash. On the afternoon of March 12, 2015 Conner sent two of his employees, Adam Murwin and Dalton Johns, to Calumet City, Illinois to complete the purchase of the vehicle.

In a parking lot near the Calumet City police department, Murwin and Johns met a man who was driving the Challenger. After Johns test drove and inspected the Challenger, he gave the seller $15,000 in cash. The seller gave Johns the keys to the Challenger, the Challenger's Missouri certificate of title bearing the signatures of Michael and Linda Larsen, a bill of sale (bearing Michael Larsen's name but not Linda's) and a Notice of Lien Release letter purporting to be from Bank of the West to Linda and Michael Larsen dated February 6, 2015. The Missouri certificate of title contained the following statement:

> LIEN RELEASE To release any lien shown on the face of this title, the lienholder must complete a notarized lien release (DOR 4809) to be attached to this title before the purchaser applies for a Certificate of Title.

The purported Notice of Lien Release letter that the seller gave to Johns was not notarized, nor was Missouri Form 4809 attached to the certificate of title.

5

During this transaction Murwin and Johns did not ask the seller what his name was and they did not ask him to provide any identification, nor did the seller volunteer such information. Murwin and Johns did not attempt to call the phone number on the Notice of Lien Release or otherwise attempt to verify its authenticity. Had they done these things, then they might have discovered that the Notice of Lien Release was fake. Contrary to what was represented on the phony letter, the Bank of the West had *not* released its lien on the Challenger on February 6, 2015 or at any other time. As of March 12, 2015, the Larsens still owed more than $15,000 on their loan for the Challenger and the Bank of the West still had a security interest in the vehicle.

Unaware of these facts, Johns and Murwin returned to Rock County with the Challenger and the paperwork provided by the seller and they delivered everything to Christopher Conner. Several days later, Conner transferred the Challenger to his dad, plaintiff David Conner, for an agreed-upon price of $15,000. On April 9, 2015, David Conner registered the Challenger with the Wisconsin Department of Transportation, Department of Motor Vehicles ("DMV"). The DMV issued a certificate of title registering the Challenger in the name of David Conner.

About two and a half months later, the Cedar County Sheriff's Department contacted the Rock County Sheriff's Department, requesting its assistance in recovering a stolen Dodge Challenger believed to be located in Rock County, Wisconsin. The matter was assigned to defendant Brent Reilly, a detective for the Rock County Sheriff's Department. Det. Reilly ran a check of the Challenger's VIN with DMV. DMV records indicated that the Challenger had been registered to David Conner in April 2015 and that the Challenger had been reported as stolen.

On June 25, 2015, Det. Reilly and Detective Coreen Bilhorn of the Rock County Sheriff's Office went to David Conner's residence where they made contact with him. Conner told them he was in possession of the Challenger but he would not surrender it without a warrant. Accordingly, Det. Reilly applied to the Rock County Circuit Court for a warrant to seize the 2009 Dodge Challenger as evidence of the crime of receiving stolen property. The court issued the search warrant, which stated:

> NOW, THEREFORE, in the name of the State of Wisconsin, you are commanded forthwith to search the said property, including outbuildings and if the same or any portion thereof are found, to bring the same and the person in whose possession the same are found, and return this warrant within 48 hours before the said Court to be dealt with according to law.

Det. Reilly returned to the Conner residence, produced the search warrant and arranged for a tow truck to transport the Challenger to Rock County's impound lot. The impound lot is under the control of the Bureau of Identification, a department of the Rock County Sheriff's Department. Det. Reilly, however, never brought Conner or the 2009 Dodge Challenger "before the said Court to be dealt with according to law."

Det. Reilly informed the Cedar County Sheriff's Department that the Dodge Challenger had been located and impounded; the Cedar County Sheriff's Department informed Reilly that it intended to take possession of the vehicle. On June 26, 2015, the Cedar County Sheriff's Department informed Rock County that it could release the stolen Challenger to Mike and Linda Larsen.

Rock County Sheriff's Department Detective Kamholz asked Det. Reilly whether he had further need for the Challenger in his criminal investigation. Det. Reilly responded that he did not, since he had photographs of the vehicle and had decided not to charge Conner for being in

7

possession of stolen property. Kamholz sent an email to the Bureau of Identification to report that the Cedar County Sheriff's Department had said that the Challenger could be released to Michael and Linda Larsen. Pursuant to these instructions, someone working at the Bureau of Identification released the Challenger to Linda Larsen on June 29, 2015. Det. Reilly did not work at the impound lot and was not involved in the decision to release the Challenger to Linda Larson. Bank of the West paid for Linda Larsen's travel expenses.

OPINION

**I. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004). As the Seventh Circuit has explained, summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific

facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citing Fed. R. Civ. P. 56(e)).

## II. Procedural Due Process

Conner brings a claim under 42 U.S.C. § 1983, alleging that he was deprived of his property–the Challenger–without due process of law. To prevail on a § 1983 procedural due process claim, Conner must demonstrate that: (1) he has a cognizable liberty or property interest; (2) he suffered a deprivation of that interest by someone acting under color of state law; and (3) he did not receive the process that he was due. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). In any due process case that alleges a deprivation of property, "the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). To claim a property interest protected by the Fourteenth Amendment, "a person . . . . must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Khan*, 630 F.3d at 527 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). A legitimate claim of entitlement is "defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577.

Defendants argue that Conner never acquired a legitimate property interest in the Challenger because at all times the Bank of the West had a lien on it. Citing Wis. Stat. §§ 342.19(6) and 409.316, defendants maintain that the Bank of the West's security interest in the Challenger remained perfected even though Wisconsin issued plaintiff a "clean" certificate of title covering the Challenger without noting the Bank of the West's security interest, and that

9

Bank of the West's security interest was effective for at least four months after Wisconsin issued the certificate of title to Conner. Br. in Supp., dkt. 13 at 9-10. Finally, defendants assert that even though the Wisconsin DMV may have accepted the fraudulent lien release given to Dalton Johns by the fraudster, this acceptance did not destroy the lien.

In response to these arguments, Conner admits that the Bank of the West never released its lien on the Challenger. Nonetheless, he insists that he was a "good faith purchaser" of the vehicle and, as a consequence, has a legitimate claim of entitlement to it. Plt.'s Br. in Response, dkt. 23, at 9-12.

Conner's good-faith-purchaser argument merits little discussion. Even if he *was* a good faith purchaser who might have property rights superior to that of the Larsens, that fact is immaterial in the face of the undisputed evidence that Bank of the West never released its secured interest in the Challenger. As defendants point out, even a good faith purchaser for value acquires the property subject to a perfected security interest. *See* Wis. Stat. §§ 409.201(1) ("Except as otherwise provided in chs. 401 to 411, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors.") (mirroring UCC § 9-201(a)); 409.315(1)(a) ("A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien") (mirroring UCC § 9-315(a)(1)).

It is undisputed that the con man calling himself "L.C. Turner" never acquired a proper release of lien on the Challenger, and therefore, that the Bank of the West retained a security

interest on the vehicle at all times.[2] Thus, the Larsens could only convey title to "Turner" subject to Bank of the West's lien, and "Turner"–or his accomplice– could only convey the same title to Conner. *Accord Green v. Arcadia Fin.*, 174 Misc. 2d 411, 413, 663 N.Y.S.2d 944 (Sup. Ct. 1997), *aff'd*, 261 A.D.2d 896, 689 N.Y.S.2d 596 (1999) (seller who obtained clean title to vehicle by submitting phony release of lien to Department of Motor Vehicles did not acquire voidable unencumbered title to vehicle but instead title remained subject to finance company's lien); *Sheridan Suzuki, Inc. v. Caruso Auto Sales, Inc.*, 110 Misc. 2d 823, 826, 442 N.Y.S.2d 957 (Sup. Ct. 1981) (where thief did not perfect voidable title to vehicle he obtained by passing fraudulent check, he could not pass good title to subsequent purchaser).

Conner does not advance any argument in opposition to defendants' contention that the Bank of the West's secured property interest in the Challenger was superior to whatever property interest he might have had and would have prevailed in any action between Conner and the Bank of the West. Neither does Conner deny that a secured party may take possession of its collateral when it has been transferred to another party and the loan is not paid. *Production Credit Ass'n of Madison v. Nowatski*, 90 Wis. 2d 344, 353-354 (Wis. 1979), citing Official UCC comment 3 to Wis. Stat. § 409.306 ("[S]ince the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion."). These things being so, Conner has failed to establish that he had a

---

[2] Conner asserts that the Bank of the West authorized the sale from the Larsens to Tucker and thereby released its security interest in the vehicle. However, the evidence that Conner cites in support of this assertion does not support it. Conner cites to certain allegations in the amended complaint, but defendants denied those allegations. He also cites the declaration of Linda Larsen, but Larsen stated only that she and her husband "released the Challenger to L.C. Turner after Bank of the West informed me that our loan balance was zero." Decl. of Linda Larsen, dkt. 14, at ¶10. She does not state that Bank of the West had released its lien or had authorized the transfer of the vehicle to Turner.

legitimate claim of entitlement to the Challenger. *Accord Ochner v. Stedman*, 2013 WL 990441, at *4 (E.D. Pa. Mar. 14, 2013), *aff'd*, 572 F. App'x 143 (3d Cir. 2014) (state court's finding that plaintiff could not acquire good title to truck that had been illegally obtained by seller precluded court from finding that plaintiff had legitimate claim of entitlement to tow truck so as to establish procedural due process violation).

There is another reason why Conner's claim against Det. Reilly fails: a valid § 1983 claim for damages against an official in his individual capacity requires a showing of direct responsibility for the improper action. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). In other words, "an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id*. (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Conner does not challenge the propriety of the court-issued search warrant under which the Challenger was seized, and for good reason: the Challenger was listed as stolen in the NCIC database, and thus probable cause existed to seize it. *Accord Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012) (no predeprivation hearing required where initial seizure justified under Fourth Amendment). What Conner contests is the release of the Challenger to Linda Larsen. However, Conner has no evidence that Det. Reilly is the person who released the Challenger or authorized its release. Those acts were done by Detective Kamholz or a person working at the impound lot, neither of whom Conner has sued.

Conner's evidentiary shortcomings make sense only when one understands the theory underlying his due process claim. As best this court can discern, Conner's entire due process claim rests on the fact that the search warrant authorizing the seizure of the Challenger specified that both the car and "the person in whose possession the same is found," were to be brought

12

before the issuing judge within 48 hours to "be dealt with according to law." According to Conner, this was a "due process condition" placed upon the seizure of the vehicle by the circuit court judge that was "put in place to allow [Conner] to assert his due process rights." Br. in Supp., dkt. 23, at 16. In other words, Conner argues, because the warrant explicitly spelled out the process that he was due and Reilly denied him that process, his claim is viable *regardless* whether he had a legitimate claim of entitlement to the Challenger or Reilly was personally involved in the decision to give the Challenger to Linda Larsen.

Conner's theory is faulty. The language on the warrant was boilerplate language providing that the warrant was to be returned to the court within 48 hours of the detectives' seizure of the Challenger. To the extent that the warrant also appears to require that the "person in whose possession" the searched-for property was found should be brought to court within that time period, it is reasonable to assume that this condition only would be necessary if Conner were to have been arrested for a crime in connection with the stolen Challenger, that is, if Conner were to have been deprived of his *liberty*. The warrant, after all, authorized Det. Reilly to search for evidence "concerned in the commission of Receiving Stolen Property," and it authorized seizure of the vehicle and the *arrest* of the "person in whose possession the same was found." To Det. Reilly's credit, he did *not* arrest Conner for receiving stolen property, presumably because Det. Reilly credited Conner's explanation that he had no idea that the car had been stolen when he purchased it. This obviated any need to bring Conner personally before the court for an initial appearance on a criminal charge. In short, Conner obtained the best possible outcome available to him personally on the court's warrant.

The search warrant, which issued pursuant to the Fourth Amendment, does not say anything about providing Conner with a Fifth Amendment "due process hearing" or the right to contest the seizure of the vehicle within 48 hours of execution of the warrant. Wisconsin provides such rights in Wis. Stat. § 968.20, which states:

> Any person claiming the right to possession of property seized pursuant to a search warrant . . . may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned.

However, Conner did not request a hearing pursuant to this statute. Further, Conner does not argue—and the evidence, the law and common sense do not suggest—that the warrant's command that the person in possession of the stolen Challenger "be brought before the Court to be dealt with according to law" was for the purpose of conducting a § 968.20 hearing. Contrary to Conner's unfounded assertions, had he been brought to court as the warrant commanded, it would have been to face criminal charges, not to sort out his claim of ownership to the Challenger.

Apart from relying on his exegesis of the language in the court's criminal search warrant, Conner cites no authority to support his claim that a predeprivation hearing was required in this case before the Bureau of Identification could release the Challenger to Linda Larsen. As defendants point out, the State need not provide a predeprivation remedy so long as adequate postdeprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533-535 (1984). As just noted, Conner could have promptly requested a hearing to request the return of the Challenger under § 968.20. This remedy was available to him at the time, although it is too late for him to request a hearing now. *See City of Milwaukee v. Glass*, 2001 WI 61, 243 Wis. 2d 636,

628 N.W. 2d 343 (holding that § 968.20 creates an *in rem* proceeding and cannot be used to sue for damages once property was out of city's hands).\

In addition, Conner still could bring an action against the Bank of the West and the Larsens for replevin and conversion. *Tucker*, 682 F.3d at 661 (no due process violation where postdeprivation state law remedies such as conversion or replevin were available). The availability of these other potential remedies ends Conner's due process claim.

### III. Conversion

The elements of a conversion claim are: (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property. *Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 736, 536 N.W. 2d 814 (Ct. App. 1999). Conner's conversion claim fails for the same reason his due process claim fails: he did not have a right to possess the Challenger that was superior to Bank of the West's right to possess it. Accordingly, none of the defendants interfered with Conner's rights as an owner of the vehicle when they seized it and then released it to Linda Larsen.

### IV. Civil Conspiracy Between Rock County and Cedar County Sheriff's Departments

Civil conspiracy requires: "(1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis.2d 435, 448, 557 N.W.2d 835, 840 (Ct. App. 1996). Additionally, to form a conspiracy there must be an "agreement to violate or disregard the law," and the persons involved must "knowingly [be] members of the

conspiracy." Wis JI—Civil 2800; *see Augustine v. Anti–Defamation League of B'nai B'rith*, 75 Wis.2d 207, 216, 249 N.W.2d 547, 552 (1977) (an agreement toward the attainment of an illegal objective is a necessary element of a civil conspiracy). "In short, a civil conspiracy entails two or more persons knowingly committing wrongful acts." *Bruner v. Heritage Companies*, 225 Wis. 2d 728, 736, 593 N.W.2d 814, 818 (Ct. App. 1999).

Conner has failed to allege any facts from which a jury could find the elements of a conspiracy. There is no evidence that any wrongful acts were committed by the defendants, much less that the Rock County and Cedar County sheriff's departments *agreed* to knowingly commit wrongful acts. Further, Conner cannot show that he was damaged as a result of the actions taken by the respective sheriff's departments. Contrary to Conner's assertion, Conner did not "lose" the Challenger. He had no legitimate claim to it in the first place. To the extent that Conner was damaged, those damages were caused by the fraudster who sold him the car, not by any actions taken by the Rock County and Cedar County Sheriff's Departments.

The tone of this order granting judgment against Conner in favor of the defendants might sound unsympathetic to Conner. Actually, this court is very sympathetic to Conner's situation: he is out $15,000 cash plus any accrued attorney's fees, and he has suffered immeasurable stress, anger, and perhaps a sense of powerlessness to obtain what he thinks is the fair result here. It is *not* fair that Conner has been victimized in this transaction, but he was victimized by "L.C. Turner" (as were the Larsens, although they eventually were let off the hook by the bank when the Challenger was recovered). Yes, Conner's son and his employees took rudimentary steps to avoid a Craigslist scam–-they dealt relatively locally, they met the seller in person, and they looked at the paperwork that the seller offered—but this wasn't enough in this case because this

was a sophisticated fast-moving, fraudulent flip of a desirable muscle car involving forged documents and a quick turn-around. Rock County, Sheriff Spoden and Det. Reilly did not violate Conner's constitutional rights and they did not commit any torts against him. The law enforcement agents in Rock County and Cedar County were just doing their jobs. They are not liable to Conner in this case.

ORDER

IT IS ORDERED that the motion by defendants for summary judgment is GRANTED in its entirety. The clerk of court shall enter judgment for defendants and close this case.

Entered this 17th day of January, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge